663 F.2d 713
 Carlisle W. BRISCOE, Plaintiff-Appellant,
v.
Sgt. Martin LaHUE, Defendant-Appellee.
Charles TALLEY, Jr., Plaintiff-Appellant,
v.
James D. CROSSON, et al., Defendants-Appellees.
Chris P. VICKERS, Sr. and James N. Ballard, Plaintiffs-Appellants,
v.
Sgt. James W. HUNLEY, Individually and in his capacity as an
agent or employee of the Cedar Lake, Indiana
Police Department, Defendant-Appellee.
 Nos. 78-2378, 79-1279 and 80-1484.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 20, 1981.
Decided Oct. 27, 1981.
 
 Edmund B. Moran, Jr., Chicago, Ill., for plaintiff-appellant.
 Harriet Lipkin, Bloomington, Ind., for defendant-appellee.
 Before CUMMINGS, Chief Judge, KUNZIG, Judge,* and CUDAHY, Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 These three consolidated cases present several issues concerning the scope of 42 U.S.C. §§ 1983, 1985(3) (1976). The common thread in these cases is the question whether police officers can be sued under § 1983 for testifying falsely in criminal proceedings. In each case, judgment was entered for defendants. For the reasons stated below, we affirm.
 
 I.
 
 2
 The facts in the cases before us are as follows.
 
 1. Briscoe v. LaHue, No. 78-2378
 
 3
 Carlisle W. Briscoe alleges in his pro se complaint that defendant Martin LaHue, a member of the Bloomington, Indiana, police force, violated Briscoe's federal due process rights by falsely testifying at several judicial proceedings in the course of a state prosecution against Briscoe.
 
 
 4
 Briscoe had been charged in 1976 with committing first degree burglary, conspiracy to commit first degree burglary, and assault. LaHue was called as a witness at two probable cause hearings and at Briscoe's criminal trial. He testified at each proceeding that a latent three-point fingerprint he discovered at the scene of the crime could be linked to Briscoe. Briscoe alleges that this testimony was false, because LaHue had received an F.B.I. analysis of the fingerprint lift which stated that no latent prints of value were present on the lift.
 
 
 5
 On October 3, 1978, the District Court for the Northern District of Indiana, South Bend Division, granted LaHue's motion for summary judgment on the grounds that (1) the facts alleged in plaintiff's complaint did not suggest that LaHue testified falsely concerning the latent fingerprints found at the scene of the crime, (2) allegations of perjury alone are insufficient to state a claim for violation of due process rights, (3) LaHue was not acting under color of state law when he testified at the criminal proceedings, and (4) Briscoe is collaterally estopped from asserting that LaHue testified falsely at the criminal trial.[1]
 
 2. Talley v. Crosson, No. 79-1279
 
 6
 In June, 1978, Charles Talley, Jr., was tried in the Criminal Division of the Circuit Court of Cook County, Illinois, for aggravated kidnapping, rape and armed robbery. Although Linda Gay, the alleged victim of these crimes, had initially testified at trial that Talley had abducted her from the street into his automobile as a prelude to the alleged rape and armed robbery, she recanted that portion of her testimony concerning the alleged abduction after the close of the state's case, and was allowed to testify in rebuttal that she voluntarily entered Talley's vehicle and drank with him. This revised testimony led to a contemporaneous dismissal of the aggravated kidnapping charge. Talley was, however, found guilty of rape and armed robbery.
 
 
 7
 Talley alleges in his pro se complaint that the defendants named in the complaint conspired to deprive him of his constitutional rights to due process, equal protection and effective assistance of counsel, and that this conspiracy was motivated by his race and his status as a convicted felon.
 
 
 8
 Talley charges in his complaint that defendant Albert J. Jordan, an investigative officer in the Chicago Police Department, testified perjuriously regarding statements Talley allegedly made about the identity of the alleged victim of the crimes and Talley's purported recognition of the alleged victim at a pre-trial identification proceeding.
 
 
 9
 Defendant Linda Gay is alleged to have perjured herself at Talley's trial by stating that Talley kidnapped, raped and robbed her when, in fact, according to Talley, he did not kidnap her but instead gave her money for having sexual relations with him.
 
 
 10
 Defendant William Benson was an Assistant Cook County state's attorney who prosecuted Talley and who allegedly knowingly used perjured testimony at Talley's trial and later sought and obtained substantial sentences against Talley at a hearing at which both Talley and his defense attorney were absent. Defendants Robbins, Lee T. Hettinger and John J. Cronin, assistant Cook County state's attorneys involved in certain post-conviction proceedings brought by Talley, are alleged to have withheld material evidence and information from Talley so as to deprive him of the opportunity to have a full and fair hearing on his post-conviction petition.
 
 
 11
 Defendant Bernard Carey, state's attorney for Cook County, is alleged to have knowingly used perjured testimony at Talley's trial and to have failed in his obligation to prevent his assistants from violating Talley's constitutional rights.
 
 
 12
 Defendant James D. Crosson, the presiding judge at Talley's trial, is alleged to have violated Talley's rights by using perjured testimony and entering judgments against Talley beyond the scope of his jurisdiction.
 
 
 13
 Defendant Thomas E. Lief, apparently the court reporter at Talley's trial, and John Doe No. 1, alleged to be a court reporter at certain of the proceedings related to Talley's prosecution, are claimed to have altered and deleted portions of the transcripts of the proceedings against Talley so as to adversely affect Talley's position in the criminal proceedings.
 
 
 14
 Defendant Cyrus Yonan, Jr., Talley's trial counsel, and defendants James W. Reilley, Jordan Bell, Marshall R. Weinberg and Zelma L. Berger, attorneys retained by Talley to represent him after his conviction, are alleged to have acted or failed to act in such a way as to have deprived Talley of the effective assistance of counsel. Reilley, Bell, Weinberg and Berger are also alleged to have deprived Talley of his right to have his conviction reviewed by means of a direct appeal or a post-conviction proceeding and any further appeal from a denial of post-conviction relief.
 
 
 15
 In orders without opinions dated August 7, 1978, and August 14, 1978, the District Court for the Northern District of Illinois, Eastern Division, granted the motions to dismiss of Yonan, Reilley, Bell, Berger and Weinberg. On February 22, 1979, the district court granted the motions of the remaining defendants to dismiss the complaint. The court found the "allegations of conspiracy as conclusory as those (contained in plaintiff's complaint) to be of questionable sufficiency to state a cause of action under (42 U.S.C. §§ 1981, 1983, 1985 and 1986 (1976)), even within the rule of Haines v. Kerner, 404 U.S. 519 (92 S.Ct. 594, 30 L.Ed.2d 652) (1972)." The court also dismissed Carey, Benson, Robbins, Cronin and Hettinger on the basis of absolute prosecutorial immunity. Crosson, Lief and Doe were similarly found to have absolute immunity for acts performed in what was characterized as their judicial roles.
 
 
 16
 In dismissing the claims against Gay and Jordan, the district court suggested that they were protected by witness immunity and that, in any event, plaintiff was estopped from relitigating the issue of Gay's and Jordan's credibility since those issues necessarily had been adjudicated adversely to plaintiff at his criminal trial.
 
 3. Vickers v. Hunley, No. 80-1484
 
 17
 Chris P. Vickers, Sr., and James N. Ballard charge in their pro se complaint that defendant James W. Hunley, an officer of the Cedar Lake, Indiana, police department, violated their federal constitutional rights to due process and to trial by an impartial jury by testifying falsely as a witness at their joint criminal trial in Indiana state court.
 
 
 18
 The subject matter of the testimony alleged to be perjured related to circumstances surrounding the custodial interrogation of Vickers and Ballard by the Cedar Lake police shortly after their arrest. Purportedly, Vickers and Ballard had each made similar exculpatory statements during that interrogation, and Hunley is alleged to have falsely testified that these statements were given contemporaneously and after the two men had been together following their arrest. In fact, defendants contend, Hunley knew that the statements were made some two hours apart, and before Vickers and Hunley had the opportunity to collaborate with respect to their exculpatory statements.
 
 
 19
 On February 13, 1980, Hunley's motion to dismiss was granted by a federal magistrate because Hunley's testimony was not given under color of state law. The magistrate also determined that, as a witness, Hunley was entitled to absolute immunity. Additionally, the magistrate found that plaintiff's complaint did not allege that his federal constitutional rights were violated, since the false testimony of a witness at trial does not constitute a due process violation unless it is knowingly used by the prosecutor to obtain a conviction. On March 25, 1980, the District Court for the Northern District of Indiana, Hammond Division, affirmed the magistrate's dismissal of the complaint. The court agreed with the magistrate that Hunley was not acting under color of state law when he testified at trial.
 
 II.
 
 20
 Defendants LaHue, Gay, Jordan and Hunley claim that, as witnesses, they are entitled to absolute immunity from liability under § 1 of the Civil Rights Act of 1871, now codified at 42 U.S.C. § 1983 (1976), which provides:
 
 
 21
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 22
 Although the statutory language excepts no person from its reach, it is now settled that the draftsmen of the Act intended to incorporate into the statute certain common law immunities "well grounded in history and reason." Imbler v. Pachtman, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976). Thus, absolute immunity from damage actions under § 1983 has been extended to judges, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1976), prosecutors, Imbler v. Pachtman, supra, and legislators, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Qualified immunity from § 1983 liability has been afforded to police officers, Pierson v. Ray, supra, school board officials, Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), prison officials, Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), and state executive officials, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 23
 Under the English common law, witnesses have long enjoyed absolute immunity from civil liability arising from their testimony. See, e. g., Dawkins v. Rokeby, 176 Eng.Rep. 800, 812 (C.P.1866); Henderson v. Broomhead, 157 Eng.Rep. 964, 968 (Ex.1859); The King v. Skinner, 98 Eng.Rep. 529 (K.B.1772) (per Lord Mansfield, J.); Anfield v. Feverhill, 80 Eng.Rep. 113 (K.B.1614); Cutler v. Dixon, 76 Eng.Rep. 886 (K.B.1585). This rule of absolute witness immunity has been incorporated into American common law, with the qualification that, for the immunity to attach, the witness' statements must be relevant to the court's inquiry. See, e. g., Chambliss v. Blau, 127 Ala. 86, 28 So. 602 (1899); Cooley v. Gaylon, 109 Tenn. 1, 70 S.W. 607 (1902); Marsh v. Ellsworth, 50 N.Y. 309 (1872); Barnes v. McCrate, 32 Me. 442 (1851). See also Restatement (Second) of Torts § 588 (Tent.Draft No. 20, (1974).
 
 
 24
 By no means, however, does our determination that witnesses enjoy absolute immunity from civil liability at common law end our inquiry concerning the appropriate immunity to be afforded witnesses in § 1983 actions. As the Supreme Court noted in Newport v. Fact Concerts, Inc., 101 S.Ct. 2748, 2755, 69 L.Ed.2d ---- (1981):
 
 
 25
 One important assumption underlying the Court's (§ 1983 immunity) decisions ... is that members of the 42d Congress were familiar with common law principles, including defenses previously recognized in ordinary tort litigation, and that they likely intended these common law principles to obtain, absent specific provisions to the contrary.
 
 
 26
 At the same time, the Court's willingness to recognize certain traditional immunities as affirmative defenses has not led it to conclude that Congress incorporated all immunities existing at common law. See Scheuer v. Rhodes, 416 U.S. 232, 243 (94 S.Ct. 1683, 40 L.Ed.2d 90) (1974). Indeed, because the 1871 Act was designed to expose state and local officials to a new form of liability, it would defeat the promise of the statute to recognize any pre-existing immunity without determining both the policies that it serves and its compatibility with the purposes of § 1983. See Imbler v. Pachtman, 424 U.S. (409) at 424 (96 S.Ct. 984, 996, 47 L.Ed.2d 128); id., at 434 (96 S.Ct. at 996) (concurring opinion); Owen v. City of Independence, 445 U.S. 622, 638 (100 S.Ct. 1398, 1409, 63 L.Ed.2d 673) (1980). Only after careful inquiry into considerations of both history and policy has the Court construed § 1983 to incorporate a particular immunity defense.
 
 
 27
 Thus, common law immunities are not to be imported wholesale into the 1871 Act. In Scheuer v. Rhodes, for example, the Court determined that the purposes of the Act would be frustrated if state executive officials were afforded the traditional absolute immunity from civil liability. Although the policies underlying common law executive immunity-e. g., encouraging the fearless exercise of discretion-would seem to apply with equal force in § 1983 actions, these policies were not found to be sufficient to override the national interest, expressed in § 1983, in holding state officials accountable for violation of rights secured by the Constitution and laws of the United States. The Court therefore extended state executive officials only a qualified immunity from § 1983 liability for those official acts committed reasonably and in good faith. 416 U.S. at 245-46, 94 S.Ct. at 1691.
 
 
 28
 Through a similar analysis, the court in Briggs v. Goodwin, 569 F.2d 10 (D.C.Cir.1977), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), rejected the application of absolute witness immunity in § 1983 actions:
 
 
 29
 Whatever the precise nature of the immunity accorded to witnesses at common law, that immunity applies without distinction to any individual serving as a witness in a judicial proceeding. On the other hand, where a constitutional infringement is alleged, the defendant-witness will almost invariably be a Government official. (At minimum, the 'under color of law' requirement will assure some direct government involvement in the challenged testimony.) This is a crucial difference. Policy considerations counselling the insulation of private citizens from civil liability arising from their performance as witnesses do not apply with equal force when a Complaint charges that constitutional rights have been violated by a public employee operating from the witness stand.
 
 
 30
 The unique importance of constitutional rights hardly needs restatement. Both Congress and the Supreme Court have created causes of action to provide a remedy for official misconduct which infringes constitutionally protected interests. Given this notably solicitous attitude toward the effectuation of constitutional guarantees, it can be asserted with both reason and authority that absolute immunity is not to be extended to the constitutional tort context absent the most compelling justification.
 
 
 31
 Id. at 28 (emphasis in original). See also Hilliard v. Williams, 516 F.2d 1344 (8th Cir. 1975), vacated and remanded on other grounds, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976).
 
 
 32
 There is much to be said for this conclusion. First, the policies underlying traditional witness immunity may not apply with equal force to the testimony of public officials. Absolute immunity is afforded by the common law to free witnesses "from intimidation by the possibility of civil liability for what they say." W. Prosser, The Law of Torts § 114, at 777-78 (4th ed. 1971). The fear of civil liability might dissuade witnesses from testifying, see Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum.L.Rev. 463, 476 (1909), and cause witnesses to censor their own testimony, see Imbler v. Pachtman, 424 U.S. at 439-40, 96 S.Ct. at 999 (White, J., concurring). But it may be that public officials, who in any event face the possibility of liability for most of their official acts, who may be obligated to testify as an aspect of their official duties, and who are normally represented by government counsel in § 1983 actions, would be less intimidated than a lay witness by the threat of a § 1983 action.
 
 
 33
 Second, a witness, at least in theory, exercises no discretion in the performance of his duty to answer fully and truthfully all questions put to him, unless the requested information would be self-incriminating or would violate some other evidentiary privilege. But in those cases granting absolute immunity in the § 1983 context, the need to protect the fearless exercise of discretion has been a paramount consideration. As the Imbler court stated in justifying absolute prosecutorial immunity:
 
 
 34
 If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.
 
 
 35
 424 U.S. at 424-25, 96 S.Ct. at 992. Because witnesses do not exercise similar discretion, the need for absolute immunity seems correspondingly less compelling.
 
 
 36
 Another consideration militating against absolute immunity lies in the fact that abuse of the judicial process generally, and perjury and subornation of perjury specifically, appear to have been prominent concerns prompting enactment of the 1871 Act by the 42d Congress. See generally 1 B. Schwartz, Statutory History of the United States: Civil Rights 597-653 (1970) (setting forth the legislative history of the 1871 Act). To afford witnesses absolute immunity from § 1983 liability might thus frustrate one of the purposes of the Act. Moreover, absolute immunity, whenever it is recognized, necessarily overrides § 1983's fundamental purpose of compensating individuals for deprivations of federal statutory and constitutional rights.
 
 
 37
 But despite these important considerations, the conclusion of the Briggs court has not generally prevailed. A substantial majority of the courts of appeals considering this issue have held that witnesses are entitled to absolute immunity. See, e. g., Myers v. Bull, 599 F.2d 863 (8th Cir.), cert. denied, 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979); Blevins v. Ford, 572 F.2d 1336 (9th Cir. 1978); Burke v. Miller, 580 F.2d 108 (4th Cir. 1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976).
 
 
 38
 In addition to the established common law tradition of absolute immunity, we perceive two other reasons that justify this conclusion. First, although § 1983 is directed primarily at public officials, private parties who are alleged to have conspired with public officials to violate an individual's federal rights can also be liable under § 1983. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). In addition, private parties may be named as defendants in 42 U.S.C. § 1985(3) (1976) actions. See Part IV, infra. There seems some basis to surmise that, were witnesses deprived of immunity for their testimony, baseless complaints alleging that lay witnesses conspired with prosecutors to deprive criminal defendants of a fair trial would proliferate. The prospect of being required to defend against such retaliatory suits by angry former defendants might well dissuade potential complaining witnesses from pressing criminal charges or from testifying with total candor at criminal proceedings.
 
 
 39
 Second, as with prosecutors and judges, absolute immunity from civil liability does not leave the public without any means of deterring witness misconduct or punishing such misconduct when it occurs. The rigors of cross-examination and the penalties of criminal prosecution at both the state and federal levels provide substantial checks against false testimony by witnesses.[2]
 
 
 40
 Although we thus find important considerations both favoring and weighing against absolute witness immunity, we are persuaded that recent comments addressed to the subject by the Supreme Court (although not controlling) seem deliberate and authoritative and, hence, should be regarded as dispositive. In Butz v. Economou, 438 U.S. 478, 511-12, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978), the Court stated:
 
 
 41
 The cluster of immunities protecting the various participants in judge supervised trials stems from the characteristics of the judicial process rather than its location. As the Bradley Court suggested, 13 Wall., at 348-49, controversies sufficiently intense to erupt in litigation are not easily capped by judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. See Pierson v. Ray, supra, 386 U.S. at 554 (87 S.Ct. at 1217). Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.
 
 
 42
 At the same time, the safeguards built into the judicial process tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct. The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges. Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. Jurors are carefully screened to remove all possibility of bias. Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decision making process, there is a less pressing need for individual suits to correct constitutional error.[3]
 
 
 43
 emphasis added.
 
 
 44
 We therefore conclude that Gay, Jordan, Briscoe and Hunley, as witnesses, are absolutely immune from § 1983 liability and were therefore properly dismissed from these lawsuits.[4]
 
 III.
 
 45
 The remaining public officials named as defendants in Talley's complaint were also properly dismissed on the basis of absolute immunity.
 
 
 46
 Defendants Benson, Robbins, Crosson and Hettinger, prosecuting attorneys in plaintiff Talley's criminal prosecution, and defendant Carey, then state's attorney for Cook County, were alleged to have knowingly used perjured testimony and withheld material evidence from appellate tribunals. Carey was also alleged to have insufficiently supervised his assistants' prosecution of Talley. But Imbler v. Pachtman, supra, holds that prosecutors enjoy absolute immunity from civil suits for damages based on acts performed within the scope of the prosecutor's function as advocate. Since the misconduct alleged here is "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. at 430, 96 S.Ct. at 994, it cannot form the subject of a civil rights claim for damages against these prosecutors. The motion to dismiss filed by these defendants was therefore properly granted by the district court.
 
 
 47
 James D. Crosson, the presiding judge at Talley's criminal trial, was alleged to have knowingly "used" Gay's allegedly perjurious testimony at Talley's criminal trial. Crosson was also charged with entering a judgment of guilty against plaintiff on charges of rape and armed robbery and sentencing plaintiff to substantial periods of incarceration after these charges had been dismissed. Talley urges that the reinstatement of these charges, after their dismissal and in the absence of both defendant and his counsel, constituted an act entirely beyond the jurisdiction of defendant Crosson.
 
 
 48
 But we believe that the district court properly dismissed Judge Crosson from the case under the doctrine of judicial immunity, which extends to all acts performed by judges in their judicial capacity. As Judge Leventhal stated in Apton v. Wilson, 506 F.2d 83, 90 (D.C.Cir.1974):
 
 
 49
 The judge is not liable for any injuries resulting from acts within his jurisdiction, and jurisdiction is construed broadly so that a judge will not be held liable unless he acts without color of authority. See Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). The common law immunity of judges is fully applicable in suits under 42 U.S.C. § 1983 alleging deprivations of constitutional rights. Pierson v. Ray, 386 U.S. 547, 553-555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).
 
 
 50
 See also Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1977). There is no question that Judge Crosson was acting under color of his judicial authority in presiding over Talley's trial and in entering judgment and sentence against him. The allegation that Crosson reinstated the charges against Talley after their dismissal is insufficient to suggest that Crosson's acts were done in "the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)).[5] See Gregory v. Thompson, 500 F.2d 59 (9th Cir. 1974).
 
 
 51
 Lief and Doe, alleged to be the court reporters at the criminal proceedings against Talley, were properly dismissed by the district court under this court's holding in Dieu v. Norton, 411 F.2d 761 (7th Cir. 1969), which extended the protection of judicial immunity to court reporters acting in the "discharge of their official responsibilities." Id. at 763.[6]
 
 IV.
 
 52
 Talley maintains that he stated a claim against defendants Reilley, Bell, Weinberg, Berger and Yonan and therefore that the district court's order granting their motions to dismiss should be reversed. Yonan, as Talley's trial counsel, and Reilley, Bell, Weinberg and Berger, as Talley's post-conviction counsel, were not acting under color of state law in representing Talley. However, private parties may be liable under § 1983 if they conspired with public officials to deprive a plaintiff of his constitutional rights. Adickes v. S. H. Kress & Co., supra, 398 U.S. at 152, 90 S.Ct. at 1605. Moreover, a cause of action can be stated under 42 U.S.C. § 1985(3) (1976), even in the absence of state action,[7] if it is alleged that the defendants conspired for the purpose of violating plaintiff's right to equal protection of the laws. Griffin v. Breckenridge, 403 U.S. 88, 103-04, 91 S.Ct. 1790, 1798-1799, 29 L.Ed.2d 338 (1971).[8]
 
 
 53
 Of course, Talley's pro se complaint is to be liberally construed, and should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957)). But even under the generous standard of Haines, conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. Here, Talley's sole allegation of conspiracy against the 15 named defendants is contained in the following omnibus paragraph:
 
 
 54
 That all defendants mentioned above and there (sic) agents, acted under color of state law and their private capacity, knowingly and wilfully, conspired together, with the malicious intent and purpose of depriving convicted accused and or Negro citizen and or convicted felon and or incarcerated client of Due process, Effective Assistance of councel (sic), and Equal Protection of the Laws and Privileges of United States, to-wit without plaintiff's consent or knowledge.
 
 
 55
 This recitation of legal conclusions is wholly devoid of facts upon which a claim for relief can be based. Since Talley's complaint does not set forth any facts suggesting a conspiracy between state officials and the private defendants, it fails to state a § 1983 claim. And since there are no allegations of specific facts suggesting a racial or other invidiously discriminatory animus behind the private defendants' alleged conspiracy, the complaint similarly fails to state a claim under § 1985(3). Our conclusion goes not to artlessness which, of course, may be forgiven in such pro se complaints, but to the lack of intimation of any facts underlying the claim. As we stated in Tarkowski v. Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980), "even a pro se litigant is required to allege something in the way of facts before his allegations of conspiracy may be deemed to state a claim.... mere conjecture that there has been a conspiracy is not enough ...."[9] Dismissal of Talley's claim against Yonan, Reilley, Berger, Weinberg and Bell was therefore appropriate.[10]
 
 
 56
 For the foregoing reasons, the judgments of the district courts are affirmed.[11]
 
 
 
 *
 The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation
 
 
 [1]
 Although Briscoe was convicted by a jury for the offenses charged against him, his conviction was reversed by the Indiana Court of Appeals, which held that the record evidence was insufficient to support his conviction. Briscoe v. State, 388 N.E.2d 638, 643-47 (Ind.App.1979). Because his conviction was reversed, Briscoe is, of course, clearly no longer collaterally estopped from claiming that LaHue perjured himself
 
 
 [2]
 In discussing federal criminal sanctions for prosecutorial misconduct, the Imbler court stated:
 This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength of 18 U.S.C. § 242, the criminal analog of § 1983. The prosecutor would fare no better for his willful acts.
 424 U.S. at 429, 96 S.Ct. at 994 (citations and footnotes omitted). We believe that witnesses may be similarly liable to prosecution under 18 U.S.C. § 242 (1976), assuming the requisite element of state action can be satisfied. See note 4, infra.
 
 
 [3]
 Absolute witness immunity in § 1983 suits was also discussed approvingly in Justice White's concurring opinion in Imbler v. Pachtman, 424 U.S. at 439-40, 96 S.Ct. at 999:
 (A witness) must be permitted to testify without fear of being sued if his testimony is disbelieved ... Of course, witnesses should not be encouraged to testify falsely .... However, if the risk of having to defend a civil damage suit is added to the deterrent against such conduct already provided by criminal laws against perjury and subornation of perjury, the risk of self censorship becomes too great.
 
 
 [4]
 Jordan, Briscoe and Hunley (all police officers) also argue that their motions to dismiss were properly granted because, in testifying, they were not acting "under color of" state law, as required by § 1983. It is true that private parties are not acting under color of law when they testify at a criminal proceeding. See Grow v. Fisher, 523 F.2d 875, 879 (7th Cir. 1975). It is also true that acts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way "related to the performance of police duties." Johnson v. Hackett, 284 F.Supp. 933, 937 (E.D.Pa.1968) (police officer not acting under color of state law when, while on duty, he called plaintiff derogatory names and challenged him to a fight)
 But we cannot agree that, as a matter of law, the testimony of a police officer concerning information obtained during the course of the officer's investigative duties is never under color of law, because it may be that the full performance of an officer's investigative responsibilities includes the duty to testify at a criminal proceeding to present the results of that investigation. If such a duty to testify existed as part of an officer's official functions, whether by regulation or by custom, see Adickes v. S. H. Kress & Co., supra, then the officer's testimony may well be under color of state law. Cf. Hilliard v. Williams, supra. In light of our witness immunity holding, however, we need not definitively address the color of law issue here.
 
 
 [5]
 In Bradley, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. Id., at 352
 Stump v. Sparkman, 435 U.S. at 357 n. 7, 98 S.Ct. at 1105.
 
 
 [6]
 Dieu v. Norton is directly on point and is dispositive of the issue. Contra, Slavin v. Curry, 574 F.2d 1256, 1265-66 (5th Cir. 1978). Were this a matter of first impression, the author of this opinion might have some difficulty in justifying judicial immunity for court reporters, whose duties do not significantly appear to involve the exercise of discretion
 
 
 [7]
 However, in this circuit an allegation of state involvement is necessary to state a claim under § 1985(3) if "the federal right relied upon is one requiring an element of state action." Cohen v. Illinois Institute of Technology, 581 F.2d 658, 663-64 (7th Cir. 1978), cert. denied, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979)
 
 
 [8]
 Section 1985(3) has been construed to require a showing of "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." Griffin v. Breckenridge, 403 U.S. at 102, 91 S.Ct. at 1798; Askew v. Bloemker, 548 F.2d 673, 678 (7th Cir. 1976)
 
 
 [9]
 See also Heidelberg v. Hammer, 577 F.2d 429, 432 (7th Cir. 1978) ("We think, however, that broadside unspecific allegations of inducing perjury by numerous witnesses are insufficient even under the liberal pleading rules of Haines v. Kerner."); Mosher v. Saalfield, 589 F.2d 438, 441 (9th Cir. 1978) ("While it is true that conspiracy claims may be brought under § 1983, ... more than vague conclusory allegations are required to state a claim.")
 
 
 [10]
 Although we find Talley's claim against Reilley, Bell, Weinberg, Berger and Yonan insufficient, Talley should be allowed to replead, if he so elects. See Tarkowski v. Bartlett Realty Co., supra, at 1207; Heidelberg v. Hammer, supra at 432-33
 
 
 [11]
 With the caveat suggested by note 10, supra