Vincent SCHICKLER, TMD U.S.A., Inc.,

v.

The UNITED STATES.

No. 02–123C.

United States Court of Federal Claims.

Oct. 24, 2002.

Vincent Schickler, Smithtown, NY, plaintiff pro se.

Michael D. Austin, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for the defendant.

## OPINION

YOCK, Senior Judge.

This Government contract case is the latest in a series of actions brought by the plaintiff in various forums, seeking damages arising out of a 1992 breach of contract, and the alleged wrongful debarment of the plaintiff in 1994, by the General Services Administration (the "GSA"). The case is before the Court on the defendant's Motion to Dismiss. For the reasons explained below, the defendant's motion is granted, and the Complaint is to be dismissed.

*Background*

The factual background described below is based upon the Complaint and upon prior decisions of the United States Court of Appeals for the Federal Circuit (the "Federal Circuit"), the United States District Court for the Eastern District of New York (the "District Court"), and the General Services Administration Board of Contract Appeals (the "GSBCA").

TMD U.S.A., Inc. ("TMD"), is an ocean and air freight forwarder in the business of handling and transporting ocean and air export shipments. Vincent Schickler (the "plaintiff") is the president of TMD. In December 1991, the GSA entered into a tender agreement with TMD, pursuant to which TMD was to provide ocean freight forwarding services for a one-year period, from February 1, 1992, through January 31, 1993, at a price of $19.75 per shipment.

In July 1992, the GSA's contracting officer (the "CO") informed the plaintiff that GSA was experiencing problems with TMD's services and billings. TMD denied the accusations, but apparently GSA stopped requesting shipments through TMD in July 1992. In December 1992, the GSA sent a letter informing TMD that it had been placed in a 90–day nonuse status, retroactive to October 1, 1992, based upon alleged ongoing problems with billings and documentation.

On January 3, 1994, TMD submitted a claim to the CO, asserting $49,999.99 in damages due to GSA's alleged breach of the tender agreement. The CO determined that TMD was entitled to $158. TMD appealed the CO's decision to the GSBCA on May 1, 1994. On October 31, 1996, the GSBCA issued its decision, holding that the GSA breached the tender agreement by placing TMD in nonuse status in a manner that contravened regulations; because TMD did not support its damages claim, however, the

GSBCA awarded TMD $395, calculated by multiplying 20 shipments, which TMD should have received, by the per-shipment fee of $19.75. *TMD U.S.A., Inc. v. GSA,* GSBCA No. 12296, 96-2 B.C.A. (CCH) ¶ 28,613, 1996 WL 640030 (1996).

While TMD pursued its claim against the GSA, the GSA concurrently initiated debarment proceedings against TMD and the plaintiff. The GSA sent a letter to TMD and to the plaintiff, dated February 16, 1994, informing them that the GSA had initiated proceedings to debar both of them from Government contracting. TMD and the plaintiff submitted responses to the notice of proposed debarment. By certified letter dated June 15, 1994, the GSA notified TMD and the plaintiff that both were debarred from Government contracting, effective as of the date of the letter through February 15, 1997.

On November 26, 1997, TMD and the plaintiff submitted another claim to the CO, asserting business damages of $253,515.52 due to the GSA's allegedly wrongful debarment. The submission also included an additional Equal Access to Justice Act ("EAJA")[1] claim, seeking $18,794.28 in costs incurred in connection with the 1996 GSBCA decision. The CO denied the claim on December 10, 1997.

On March 23, 1998, TMD and the plaintiff filed a complaint in the District Court, asserting three claims:

(1) a *breach of contract claim* stemming from GSA's refusal to grant shipments to TMD and placing TMD on non-use status during the February 1, 1992 through January 31, 1993 contract period; (2) a *tortious interference with contract claim* based on GSA debarring the plaintiffs from government contracting, and seeking $253,515.52 in damages for lost profits; and (3) an EAJA claim, seeking damages totaling $18,794.28 for recovery of costs related to two trips to Washington, D.C., an uncollected business loan to TMD from Schickler, and office expenses.

*TMD USA, Inc. v. GSA,* No. 98 CV 1910, slip op. at 3-4 (E.D.N.Y. Mar. 23, 1999). With respect to the breach of contract claim, the District Court cited the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (1994 & Supp. V 1999) (the "CDA"), in holding:

In view of the fact that the plaintiffs brought their initial appeal [of the CO's decision] to the GSBCA, they were locked into a process that allowed further appeal only to the United States Court of Appeals [for the Federal Circuit] within 120 days. The plaintiffs failed to do so, and consequently the Court grants the GSA's motion to dismiss the claim sounding in breach of contract for lack of subject matter jurisdiction.

*Id.* at 7. With respect to the tortious interference with contract claim, the District Court held that, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (1994), "the plaintiffs' claim alleging tortious interference with contract must be dismissed for lack of subject matter jurisdiction, as the United States has not waived its sovereign immunity from suit relating to the cause of action." *Id.* at 8. With respect to the EAJA claim, the District Court held that the plaintiff and TMD were time barred from seeking EAJA costs, because they did not submit an application for such costs to the GSBCA within 30 days after final disposition of the claim, as required by the EAJA and by the Rules of Procedure of the GSBCA. *Id.* at 10-11. The District Court dismissed all of the claims of TMD and the plaintiff with prejudice. *Id.* at 11.

On July 10, 2000, TMD filed a "Notice of Appeal and Complaint" with the GSBCA, appealing the CO's deemed denial of TMD's and the plaintiff's claims dated November 26, 1997. TMD again sought $253,515.52 in business damages allegedly caused by the GSA's wrongful suspension and debarment, along with $18,794.28 in EAJA costs. It is not apparent from the filings in the instant case whether the GSBCA was aware of the District Court opinion.

On July 21, 2000, the GSBCA issued its decision. Like the District Court, the

---

**1.** The EAJA authorizes courts to "award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded * * * incurred by that party in any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A) (1994).

GSBCA held that the EAJA claim is forever time barred, because an application for EAJA costs was not submitted to the GSBCA within 30 days after the GSBCA's 1996 decision became a final disposition. *TMD U.S.A., Inc. v. GSA,* GSBCA No. 15363, 00–2 B.C.A. (CCH) ¶ 31,031, 2000 WL 1035389 (2000). With respect to the business damages claim, the GSBCA determined that it did not have jurisdiction over the claim at that time, because the claim submitted to the CO had not been certified.[2]

On July 31, 2000, TMD and the plaintiff submitted a certified claim to the CO, asserting $253,515.52 in business damages resulting from GSA's alleged wrongful acts of suspension, nonuse, debarment and continual nonuse. The CO did not issue a written decision, so on October 4, 2000, TMD and the plaintiff filed an appeal of the CO's deemed denial of their claim with the GSBCA.

The GSBCA issued its decision on November 16, 2000, dismissing the claim for lack of subject matter jurisdiction because "boards of contract appeals * * * do not have jurisdiction over claims for damages resulting from debarments." *TMD U.S.A., Inc. v. GSA,* GSBCA No. 15420, 01–1 B.C.A. (CCH) ¶ 31,197, 2000 WL 1732550 (2000). To the extent that the complaint again sought damages for the period of nonuse under the 1992–1993 tender agreement, the GSBCA held that such claim was barred by the doctrine of *res judicata.*

The plaintiff appealed the GSBCA decision to the Federal Circuit, which issued its decision on June 5, 2001. *Schickler v. Davis,* 10 Fed.Appx. 944 (Fed.Cir.2001). Affirming the decision of the GSBCA, the Federal Circuit determined that "the [GSBCA] correctly held that it did not have jurisdiction under the Contract Disputes Act." *Id.* at 947. The plaintiff thereafter filed a petition for certiorari with the United States Supreme Court, which was denied. *Schickler v. Davis,* 534 U.S. 923, 122 S.Ct. 277, 151 L.Ed.2d 204 (2001).

The plaintiff filed his Complaint in this Court on February 13, 2002. The Complaint appeals the CO's deemed denial of the certified claim submitted by the plaintiff and TMD on July 31, 2000. The Complaint asserts a claim for $253,309.80 in business damages (slightly different from the $253,515.52 certified claim submitted to the CO), caused by the GSA's allegedly wrongful debarment of TMD and the plaintiff. The Complaint also alleges that the GSA's negligence contributed to the business damages. It appears that the Complaint also appeals the sufficiency of the GSBCA's award of $395 for breach of contract damages. In addition, the plaintiff resurrects his $18,794.28 EAJA claim, bringing his total claim to $272,104.08. (Compl. at 3.)

*Discussion*

### I. *Identity of the Plaintiff*

■ The Complaint is captioned *"Vincent Schickler TMD U.S.A., Inc. v. The United States."* The plaintiff's name is a confusing amalgamation of the name of a corporation and the name of that corporation's president. Adding to the confusion, the four claims asserted in the Complaint tend to make no distinction between whether the claims are asserted in a corporate capacity by TMD or in a personal capacity by Mr. Schickler. Further complicating the matter, Mr. Schickler is proceeding *pro se,* and has made known his likely inability to retain an attorney due to the alleged economic "circumstances caused by the Defendant." (Pl.'s Answer to Def's. Mot. to Dismiss at 7.)

While Mr. Schickler may represent himself in his personal capacity, he is proscribed by the rules of this Court from representing TMD. Rule 83.1(c)(8) of the Rules of the United States Court of Federal Claims ("RCFC") provides that: "[a]n individual may represent oneself or a member of one's immediate family as a party before the court. Any other party, however, must be represented by an attorney who is admitted to practice in this court. A corporation may only be represented by counsel." There are no exceptions to this clear and unqualified rule.

---

**2.** Each claim of more than $100,000 must be certified by the contractor. 41 U.S.C. § 605(c)(1) (1994).

*Talasila, Inc. v. United States,* 240 F.3d 1064 (Fed.Cir.2001).

The Court has considered two ways in which to deal with the Complaint. The first option would be to stay proceedings and order TMD to obtain representation by counsel, despite Mr. Schickler's self-expressed lack of financial ability to do so. The second alternative is to dismiss TMD as a plaintiff in this case and consider the claims only as they relate to Mr. Schickler. In this Court's judgment, the latter option is the better course of action.

First, removing TMD from the case comports with Mr. Schickler's desire to avoid hiring an attorney. Second, requiring an attorney to enter an appearance on behalf of TMD in this particular case would amount to an exercise in futility and unnecessary expense-as explained in Section IV of this Opinion, TMD would not be able to maintain its claims in this Court even if an attorney had entered an appearance on its behalf. Finally, dismissing TMD and its claims without prejudice will not in itself preclude TMD from asserting valid claims if it later decides to retain an attorney to make an appearance on its behalf in this Court.[3]

Accordingly, to the extent that the Complaint asserts claims on behalf of TMD, those corporate claims are dismissed without prejudice for failure to comply with RCFC 83.1(c)(8). Mr. Schickler shall be considered the only plaintiff in this action, and the four claims asserted in the Complaint shall be construed as seeking relief only in Mr. Schickler's personal capacity. Because of the close alignment of interests of Mr. Schickler and TMD, however, in assessing the claims asserted by Mr. Schickler, the Court will comment, via footnotes, on the viability of TMD's claims as if TMD was properly before this Court.

## II. Standard of Review

The defendant has moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). In assessing the defendant's Motion to Dismiss, the Court accepts as true all undisputed allegations of fact asserted by the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Because the plaintiff in this case is proceeding *pro se,* this Court holds his filings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The latitude afforded the plaintiff, however, does not relieve him of the burden of proving that this Court has jurisdiction over his asserted claims if the defendant calls jurisdiction into question. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Even if the plaintiff meets the jurisdictional burden, an RCFC 12(b)(6) motion may dispose of his claims if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. Jurisdiction

Like all Federal courts, the United States Court of Federal Claims (the "Court of Federal Claims") is a court of limited jurisdiction. The Tucker Act, 28 U.S.C. § 1491, provides the basic governmental consent for suits to be brought against the Government in this Court. The statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or

---

**3.** In determining whether or not to retain an attorney to reassert TMD's claims in this Court, TMD would be well advised to review: (1) decisions of the other tribunals that have previously adjudged its claims, and (2) the instant Opinion, as the analysis of Mr. Schickler's claims in this case would apply equally to claims of TMD.

unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994). This statute does not create any substantive right enforceable against the United States for money damages; rather, it "merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Accordingly, in order to maintain a suit in this Court, a claimant must look beyond the Tucker Act and identify a contract or some constitutional provision, federal statute, or regulation which mandates the payment of money to the claimant. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

Even if the plaintiff identifies a constitutional provision, statute, regulation, or contract that mandates the payment of money and thus would otherwise vest jurisdiction in the Court of Federal Claims, the plaintiff may nonetheless be barred from bringing a claim in this Court for several reasons. Those reasons that are particularly pertinent to the instant case include the plaintiff's prior irrevocable election of remedies, the doctrine of *res judicata,* and the expiration of applicable statutes of limitation.

### A. *Election of Remedies*

The CDA provides a Government contractor, dissatisfied with a contracting officer's final decision on a contract claim, a choice of forums in which to appeal the contracting officer's decision. One alternative is to appeal the decision to the appropriate agency board of contract appeals within 90 days from the receipt of the contracting officer's decision. 41 U.S.C. § 606 (1994). The other alternative is to bring an action directly on the claim in the Court of Federal Claims within 12 months from the receipt of the contracting officer's decision. 41 U.S.C. § 609(a)(1), (3) (1994).

While the choice of forum in which to pursue a claim is left to the discretion of the contractor, the contractor's binding election, once made, is irrevocable. *Frymire v. United States,* 51 Fed.Cl. 450, 456 (2002). "[O]nce a contractor makes a binding election to appeal the CO's final decision to a board of contract appeals or to the Court of Federal Claims, the contractor can no longer pursue its claim in the other forum." *Bonneville Assocs. v. United States,* 43 F.3d 649, 653 (Fed.Cir.1994). A contractor is deemed to have made a binding election when: "1) it has sought to avail itself of one forum over another; and 2) that forum has the ability to exercise jurisdiction at the time the election is attempted." *Jo–Mar Corp. v. United States,* 15 Cl.Ct. 602, 605 (1988). Consequently, if the contractor makes a binding election to bring an appeal of a contracting officer's decision before a board of contract appeals, such election divests the Court of Federal Claims of jurisdiction over the same claim. *See, e.g., Mobility Sys. and Equip. Co. v. United States,* 51 Fed.Cl. 233 (2001) (holding that the Court of Federal Claims did not have jurisdiction over a claim because the contractor had made a binding election to bring such claim before an agency board of contract appeals).

### B. *Res Judicata*

The doctrine of *res judicata* may also preclude a plaintiff from maintaining a claim in this Court. The doctrine provides that:

> when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). The doctrine serves to protect defendants from repetitive lawsuits based on the same conduct and to encourage plaintiffs " 'to litigate their claims in an economical and parsimonious fashion.' " *Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 385, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (citation omitted). In addition, the doctrine encourages "reliance on judicial decisions, prevent[s] vexacious [sic] litigation, and permit[s] courts to resolve

other pending suits being litigated for the first time." *Brown v. United States*, 3 Cl.Ct. 31, 41 (1983), *aff'd*, 741 F.2d 1374 (Fed.Cir. 1984).

■ *Res judicata* will bar a subsequent suit if there has been previous litigation: (1) involving the same claim, (2) between the same parties or their privies, and (3) which resulted in a final judgment on the merits by a court of competent jurisdiction. *Blonder–Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The doctrine "extends beyond those causes of action expressly included by the plaintiff in his claim to cover causes of action which were not but *should* have been raised in the prior litigation." *Brown*, 3 Cl.Ct. at 41. In keeping with the above principles, this Court will apply the doctrine of *res judicata* to deny a claim when it is apparent that a plaintiff has previously had the opportunity to fully litigate the claim in a forum that issued a final judgment on the merits of the claim.

## C.  *Statutes of Limitations*

A plaintiff also will be barred from maintaining an action if the action is not brought prior to the expiration of a statutorily-prescribed statute of limitations. The public policy underlying statutes of limitation is to encourage the early mustering and preservation of evidence and the diligent prosecution of grievances. *Creppel v. United States*, 41 F.3d 627, 633 (Fed.Cir.1994). In addition, statutes of limitations "prevent[ ] claimants from surprising the Government with potentially stale claims based on events that transpired many years before." *Id.*

Generally, a six-year statute of limitations governs claims brought before the Court of Federal Claims: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994). A claim first accrues "when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 632, 373 F.2d 356, 358 (1967).

With respect to a claim brought pursuant to the CDA, however, a different statute of limitations applies: such action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3). A deemed denial is not sufficient to start the clock on the CDA's statute of limitations; the 12–month period "does not begin to run until the contracting officer renders an actual written decision on the contractor's claim." *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1574 (Fed.Cir.1987).

## IV.  *The Plaintiff's Claims*

Although not a model of clarity, the Court distills four claims from the plaintiff's Complaint: (1) debarment of the plaintiff by the GSA was wrongful, resulting in lost profits and other business damages; (2) the GSBCA's award of $395 to TMD for breach of contract damages arising out of the 1992–1993 tender agreement was insufficient; (3) the plaintiff is entitled to EAJA costs in connection with the 1996 GSBCA decision; and (4) negligence and wrongful acts of the GSA and its agents prevented the plaintiff from contracting with the Government, causing lost profits and other business damages. Each of the claims is addressed below in turn.

## A.  *Wrongful Debarment*

The plaintiff's primary claim is that the GSA's wrongful debarment prevented him from doing business with the Government, resulting in lost profits and other business damages totaling $253,309.80. Throughout his Complaint, the plaintiff maintains that the 1996 GSBCA decision held that the GSA's debarment of TMD and the plaintiff was wrongful. The plaintiff's reading of the decision, however, is overly broad. The GSBCA decision only addressed the GSA's placement of TMD in a 90–day nonuse status; it did not address the independent debarment proceeding initiated by GSA against TMD and the plaintiff.

It does not appear that the plaintiff ever challenged the propriety of the debarment until he filed his claim in the District Court

for tortious interference with contract in 1997. Apparently because the plaintiff cast the claim as one for tortious interference rather than as a direct challenge to the propriety of the debarment, the District Court dismissed the claim for want of jurisdiction. The plaintiff's subsequent attempt to bring a wrongful debarment claim before the GSBCA also was dismissed for want of jurisdiction. The wrongful debarment claim is now before this Court.

The defendant advances several arguments for dismissing the claim. First, the defendant argues that the GSBCA, the District Court, and the Federal Circuit have all resolved the claims asserted by the plaintiff and that this Court does not have appellate jurisdiction to review the decisions of those entities. (Mot. to Dismiss at 12.) With respect to the wrongful debarment claim, however, this Court does not read the Complaint as a request to overturn the prior jurisdictional decisions of the District Court, the GSBCA, or the Federal Circuit. Rather, the plaintiff is asking this Court to decide the merits of his wrongful debarment claim, something that has eluded him in other venues.

■ Second, the defendant asserts that the doctrine of *res judicata* operates to put an end to the plaintiff's claims once and for all, because all of the claims have been before other tribunals. (Mot. to Dismiss at 15.) That argument also is unavailing. The District Court reviewed a tortious interference claim; the GSBCA reviewed a wrongful debarment claim and dismissed it for want of jurisdiction. Because there has been no prior decision on the *merits* of the wrongful debarment claim, *res judicata* does not operate to defeat the plaintiff's claim. *See Vink v. Hendrikus Johannes Schijf Rolkan N.V.,* 839 F.2d 676, 677 (Fed.Cir.1988) (noting that "[a] dismissal for lack of subject matter jurisdiction * * * is not a disposition on the merits and thus permits a litigant to refile in an appropriate forum").

■ Third, the defendant contends that the plaintiff made a binding election to bring this claim before the GSBCA and thus may not seek relief on the same claim before this Court. (Mot. to Dismiss at 21.) A plaintiff is not deemed to have made a binding elec-

tion, however, unless: (1) it has sought to avail itself of one forum over another; and (2) that forum has the ability to exercise jurisdiction at the time the election is attempted. *Jo–Mar Corp.,* 15 Cl.Ct. at 605. The GSBCA determined that it did not have the ability to exercise jurisdiction at the time the plaintiff attempted to bring the wrongful debarment claim before it, a decision affirmed by the Federal Circuit. Consequently, the election doctrine does not preclude the plaintiff from attempting to bring its wrongful debarment claim before this Court. *See Information Sys. & Networks Corp. v. United States,* 17 Cl.Ct. 527, 530 (1989) (concluding that a plaintiff is not precluded from pursuing a timely suit in the Court of Federal Claims if a claim is dismissed by a board of contract appeals for lack of jurisdiction).

■ Fourth, the defendant maintains that the claim is time barred because the plaintiff did not file it within 12 months after the CO's deemed denial of the claim. (Mot. to Dismiss at 22.) The CDA's 12–month statute of limitations does not begin to run, however, until the contracting officer renders a written decision on the plaintiff's claim; a deemed denial does not start the clock. 41 U.S.C. § 609(a)(3); *Pathman Constr. Co.,* 817 F.2d at 1574. Because the CO has not rendered a written decision on the wrongful debarment claim, the 12–month statute of limitations does not apply to the claim.

■ Finally, the defendant simply contends that this Court does not have jurisdiction over debarments. (Mot. to Dismiss at 23.) As explained below, the Court finds this argument compelling.

In order to maintain a claim in this Court, the plaintiff must identify a contract or some constitutional provision, federal statute, or regulation which mandates the payment of money to the claimant. The plaintiff cites the CDA as the requisite money-mandating statute. (Compl. at 1.)

The plaintiff similarly brought his wrongful debarment claim before the GSBCA pursuant to the CDA. The GSBCA held that boards of contract appeals do not have jurisdiction over claims for damages resulting

from debarments. On appeal, the Federal Circuit affirmed that the CDA only extends to those contracts " 'entered into by an executive agency for-(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property.' " *Schickler,* 10 Fed.Appx. at 946 (quoting 41 U.S.C. § 602(a) (1994)). The plaintiff's claim, that the wrongful debarment unfairly excluded him from the possibility of entering into future Government contracts, did not appear to the Federal Circuit to be based upon a breach of contract with the GSA. *Id.* While the debarment may have had some connection to the 1992–1993 tender agreement, and while debarment may have had some connection to future contracts for which the plaintiff could not compete, the Federal Circuit held that those connections were too tangential to support the GSBCA's jurisdiction under the CDA. *Id.* at 946–47.

For the same reasons recited by the Federal Circuit, this Court holds that it also does not have jurisdiction over wrongful debarments under the CDA. The plaintiff's claim, that the wrongful debarment unfairly excluded him from the possibility of entering into future Government contracts, resulting in lost profits and other business damages, is not based upon a breach of a contract within the scope of the CDA, and thus the CDA does not vest this Court with jurisdiction to entertain the plaintiff's wrongful debarment claim.

The plaintiff does not identify any other constitutional provision, statute, regulation, or contract provision that mandates payment for damages arising from an alleged wrongful debarment. Consequently, even if the Complaint can be construed as a direct challenge to the propriety of the debarment, rather than a claim arising under the CDA, this Court still lacks jurisdiction over the claim. *See IMCO, Inc. v. United States,* 97 F.3d 1422, 1425 (Fed.Cir.1996) (asserting that "[t]he Tucker Act does not give the [Court of

Federal Claims] jurisdiction to review the propriety of an agency's decision to debar a contractor, however; such a challenge must be brought in district court under the Administrative Procedure Act"); *accord Opalack v. United States,* 5 Cl.Ct. 349, 360 (1984) (noting that "[t]he debarment issue is one that would normally be reviewed by a United States District Court under the Administrative Procedure Act").

Even if this Court could grant the equitable relief of declaring a debarment to be wrongful, the plaintiff's wrongful debarment claim would be barred by the general six-year statute of limitations applicable to claims brought before this Court. The plaintiff's alleged wrongful debarment claim accrued on or about June 15, 1994, when he received notice of the debarment. The time for filing the claim in this Court expired on or about June 15, 2000. The plaintiff did not file his Complaint in this Court until February 13, 2002, and thus the wrongful debarment claim would, in any event, be barred by the statute of limitations.[4]

### B. *GSBCA's Award for Breach of the 1992–1993 Tender Agreement*

The plaintiff expresses considerable frustration over the GSBCA's award of $395, particularly since TMD presented a claim of $49,999.99. The plaintiff characterizes the $395 award as an offer of settlement, which TMD "refused and protested as it does not consummate, consider or reconcile the past claim for $49,999.00." (Compl. at 2.) The plaintiff seems to request that this Court award something more than the GSBCA did on TMD's breach of contract claim arising out of the 1992–1993 tender agreement.

Although the plaintiff cites the CDA as providing the jurisdictional basis for this claim, this Court does not have jurisdiction to entertain claims arising out of the 1992–1993 tender agreement or to review the GSBCA's award in relation thereto. The CDA applies only to parties who are in privi-

---

4. The same analysis would apply to TMD if TMD was properly before this Court asserting a wrongful debarment claim. This Court does not have jurisdiction over wrongful debarments un-

der the CDA, and, even if it did, the general six-year statute of limitations applicable to claims before this Court would bar TMD's wrongful debarment claim.

ty of contract with the Government. *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984). In the instant case, the only contract alleged to exist is the 1992–1993 tender agreement, and the only parties to that contract were the Government and TMD. A corporate officer does not have standing to sue on a Government contract unless he is personally a party to the contract. *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 662, 428 F.2d 1241, 1249 (1970). The plaintiff has no standing to bring a CDA claim on TMD's behalf and no privity of contract to bring a CDA claim in his own name. Accordingly, the claim is dismissed for want of jurisdiction.[5]

### C. *EAJA Costs*

The plaintiff seeks "$18,794.28 EAJA equitable adjusted cost." (Compl. at 3.) The asserted costs allegedly arose in connection with TMD's appeal of the CO's 1994 decision on its breach of contract claim. The plaintiff sought the same EAJA costs in the District Court, which ruled that the EAJA claim was forever time barred due to the failure to file the EAJA claim with the GSBCA within 30 days after the GSBCA's October 31, 1996 decision became final. *TMD USA, Inc.*, No.98 CV 1910, slip op. at 10–11. The plaintiff also appealed the CO's denial of his EAJA claim to the GSBCA, which similarly decided that the EAJA claim was forever time barred. *TMD U.S.A., Inc.*, GSBCA No. 15363, 00–2 B.C.A. (CCH) ¶ 31,031.

The EAJA claim is one that only may be asserted by TMD, the plaintiff in the underlying GSBCA action. As explained above, the plaintiff here does not have standing to

assert TMD's claims in this Court, and thus the EAJA claim must be dismissed for lack of subject matter jurisdiction. Even if the plaintiff had standing, however, this Court would nonetheless concur with the decisions of both the District Court and the GSBCA: the EAJA claim is forever time barred.[6]

### D. *Negligence and Wrongful Acts*

 The plaintiff makes several references in the Complaint to the negligence, default and wrongful doings of the GSA. To the extent that the plaintiff is alleging torts by the GSA and/or its agents and employees, this Court does not have jurisdiction over such claims. 28 U.S.C. § 1491(a)(1); *see Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 748–49, 508 F.2d 817, 821 (1974) (holding that complaints of tortious acts on the part of the United States and its representatives are not within the court's jurisdiction).[7]

### CONCLUSION

All of the claims asserted on behalf of TMD are dismissed without prejudice for failure to comply with RCFC 83.1(c)(8). This Court lacks subject matter jurisdiction over all of the claims asserted by the plaintiff, Mr. Schickler, in his personal capacity. Accordingly, the defendant's 12(b)(1) Motion to Dismiss the plaintiff's claims is granted, and the Complaint is to be dismissed in its entirety. The Clerk of the Court is ordered to enter judgment accordingly.

Each party shall bear its own costs.

---

5. Even if TMD was properly before this Court asserting the breach of contract claim on its own behalf, the claim would still be dismissed for lack of jurisdiction. TMD elected to appeal the CO's decision to the GSBCA. By making that binding election, TMD divested this Court of jurisdiction over its breach of contract claim. *Bonneville Assocs.*, 43 F.3d at 653. If TMD was dissatisfied with the GSBCA's decision, it should have appealed that decision to the Federal Circuit within 120 days. 41 U.S.C. § 607(g)(1)(A) (1994). TMD failed to do so, and thus the decision of the GSBCA became final. In addition, because the GSBCA decision became a final decision on the merits, it carries *res judicata* effect. Consequently, even if TMD's claims were not barred by its election of remedies, all of its claims arising out

of the breach of the 1992–1993 tender agreement would nonetheless be barred by the doctrine of *res judicata*.

6. The result would be the same even if TMD was properly before this Court asserting the EAJA claim on its own behalf: for the reasons set forth in the cited decisions of both the District Court and the GSBCA, TMD's EAJA claim is forever time barred.

7. Even if TMD was properly before this Court asserting the claims for negligence and wrongful acts of Government officials, the result would be the same: this Court does not have jurisdiction over such claims regardless of the identity of the plaintiff.