**BOWERS INVESTMENT COMPANY, LLC, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 10–677 C.

United States Court of Federal Claims.

April 22, 2011.

Michael C. Kramer, Fairbanks, AK, for plaintiffs.

Daniel Brett Volk, Washington, DC, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Chief Judge.

Before the court are plaintiff's Complaint (Compl.), Docket Number (Dkt. No.) 1, filed October 6, 2010; defendant's Motion to Dismiss (defendant's Motion or Def.'s Mot.), Dkt. No. 10, filed December 1, 2010; plaintiff's Response to Defendant's Motion to Dismiss (Pl.'s Resp.), Dkt. No. 13, filed December 29, 2010; and defendant's Reply in Support of Defendant's Motion to Dismiss (Def.'s Reply), Dkt. No. 14, filed January 19, 2011. Plaintiff's Complaint presents two claims, referred to as the nonpayment claim and the underpayment claim. Defendant moves to dismiss plaintiff's nonpayment claim for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. Defendant also moves to dismiss both the nonpayment and underpayment claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the RCFC. Def.'s Mot. 1. For the following reasons, the court GRANTS defendant's Motion to Dismiss.

## I. Background

On October 1, 1993 plaintiff Bowers Investment Company, LLC (Bowers or plaintiff) and defendant Federal Aviation Administration (the FAA or defendant) entered into a lease (Lease) of office and warehouse space in South Fairbanks, Alaska. Compl. ¶¶ 5–6. Under the Lease, the FAA was obligated to make monthly rental payments beginning in January 1994. Compl. ¶ 8. The Lease stated that the government would pay plaintiff an "annual rent of $256,291.20 ... at the rate of $21,357.60 ... per month in arrears." Compl. ¶ 7 (citing Ex. A,[1] FAA–Lease No. DTFA04–93–L–84029, May 25, 1993) (Lease). The rental payments to be made in arrears under the Lease were "due on the first workday of each month." Lease 4 (General Clause 22.552.232–71(a)(1)). The Lease was renewable yearly at the FAA's option, with the following provision: "beginning in year 6 (October 1, 1998) the [g]overnment shall pay [plaintiff] annual rent of $264,259.20 at the rate of $22,021.60 per month in arrears." Compl. ¶ 12 (citing Lease 2). The parties ultimately extended the Lease to September

---

1. Plaintiff cites to six exhibits in its Complaint (Compl.), Docket Number (Dkt. No.) 1, that it failed to attach to its Complaint. *See* Compl. ¶¶ 5–9, 11–16 (citing Exhibits A, B, D, E, H and I in footnotes two through fifteen). Plaintiff did attach these exhibits to its Motion for Summary Judgment (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 5. Plaintiff signed both filings on September 30, 2010. Compl. 5; Pl.'s Mot. 10. Although plaintiff's Complaint was received and filed by the Office of the Clerk of Court on October 6, 2010, plaintiff's Motion was not filed until October 13, 2010. *See* Order of Oct. 13, 2010, Dkt. No. 4 (directing the Office of the Clerk of Court to file plaintiff's Motion).

30, 2006, Compl. ¶ 6, and modified the Lease eight times, *see* Compl. ¶ 16 (referring to "Modifications 7 and 8"); Pl.'s Mot. Ex. F (titled "Modification No. Eight (8)").[2]

After the Lease expired, plaintiff submitted several claims to the FAA Real Estate Contracting Officer (Contracting Officer or CO), *Bowers Inv. Co. v. Dep't of Transp.*, CBCA 1196, 09–2 BCA ¶ 34,238 (2009) (CBCA Decision); *see* Contract Disputes Act of 1978 (CDA)[3], Act of Jan. 4, 2011, Pub.L. No. 111–350, § 7103(a)(1), 124 Stat. 3817–18 ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision."), one of which was a claim for unpaid rent for September 2006 (September 2006 claim), CBCA Decision *13. Given that the Lease required the FAA to make rental payments in arrears, plaintiff argued that the FAA's September 13, 2006 rental payment was for the rent due for August 2006, and that the FAA therefore failed to pay its last month's rent. *Id.* at *2, *13–*14. The Contracting Officer denied plaintiff's claims, including the September 2006 claim, and plaintiff appealed to the Civilian Board of Contract Appeals (CBCA). *Id.* at *1. Pub.L. No. 111–350, §§ 7104(a), 124 Stat. 3820 ("A contractor, within ninety days from the date of receipt of a contracting officer's decision . . ., may appeal the decision to an agency board. . . .").

During litigation before the CBCA, plaintiff "became aware that the first three months of the [L]ease had never been paid." Sept. 29, 2010 Aff. of Jerry Bowers (Bowers Aff.), Dkt. No. 5, ¶ 6. In plaintiff's reply brief before the CBCA (plaintiff's Appellant Reply Brief or Pl.'s Appellant Reply Br.), plaintiff claimed that there was "compelling evidence that the rent for the first three months of the leasehold—January, February and March 1994—was not paid." Def.'s App. to Def.'s Mot. to Dismiss (Def.'s App.) A82 (Pl.'s Appellant Reply Br.).[4] Plaintiff argued that it was "entitled to be paid for these three missing rent payments." *Id.* The CBCA disagreed, finding that the FAA "ha[d] submitted sufficient evidence regarding the timing of its payments and the periods of occupancy that each payment covered." CBCA Decision *15; *see also id.* at *14 ("For us to agree with [plaintiff's] argument would require our

---

**2.** Plaintiff cites in its Complaint to Exhibit E as Modification 8. Compl. ¶ 16 n. 13. However, Modification 8 is actually Exhibit F to plaintiff's Motion. Pl.'s Mot. Ex. F (titled "Modification No. Eight (8)").

**3.** Congress has recently amended the Contract Disputes Act. *See* Act of Jan. 4, 2011, Pub.L. No. 111–350, 124 Stat. 3677 (the CDA amendment). The effect of the CDA amendment as it relates to this case is the relocation of the provisions of the Contracts Disputes Act from 41 U.S.C. §§ 601–613 (2006) to 41 U.S.C. §§ 7101–7109. *See* Pub.L. No. 111–350, §§ 7101–7109, 124 Stat. 3816–26. The citations in this Opinion and Order are to the recently-enacted public law, rather than the former United States Code sections.

"[T]he intent [of the CDA amendment] is to conform to the understood policy, intent, and purpose of Congress in the original enactments, with such amendments and corrections as will remove ambiguities, contradictions, and other imperfections. . . ." Pub.L. No. 111–350, § 2(b), 124 Stat. 3677. Consistent with its expressed intent, Congress did not change the substantive law of the Contract Disputes Act as it relates to this case.

For a simplified explanation of the effect of the amendment to the Contract Disputes Act, *see* Peter LeFevre, *Positive law codification will modernize U.S. Code,* The Hill's Congress Blog (Sept.

28, 2010, 12:33 PM), http://thehill.com/blogs/congress–blog/judicial/121375–positive–law–codification–will–modernise–us–code; *see also* Vern Edwards, *What is the United States Code and what is in it?,* Vern Edwards' Blog (Aug. 18, 2010, 2:00 PM), http://www.wifcon.com/discussion/index.php?autocom=blog&blogid=2&showentry=1572.

**4.** Defendant attached an Appendix to its Motion to Dismiss (Def.'s App.), which included plaintiff's submission of its September 2006 claim to the FAA Contracting Officer, Def.'s App. A1–A8; plaintiff's appellant brief appealing to the CBCA the Contracting Officer's denial of plaintiff's September 2006 claim, Def.'s App. A37–A79; plaintiff's Appellant Reply Brief before the CBCA, A80–A100; plaintiff's submission of its nonpayment and underpayment claims to the FAA Contracting Officer, A102–A105; and the Contracting Officer's denial of plaintiff's nonpayment and underpayment claims, A107–A112. Plaintiff has not objected to the validity of these documents, and the court finds it reasonable to rely upon them as accurate. *See Jo–Mar Corp. v. United States (Jo–Mar),* 15 Cl.Ct. 602, 604 n. 1 (1988) (accepting as accurate the documents attached as an appendix to defendant's Rule 12(b)(1) motion to dismiss because plaintiff failed to file an objection contesting the validity of the documents).

acceptance of a scenario under which one or more of the first three payments commencing January 1994 were not made and Bowers did not complain in writing or otherwise regarding the FAA error.").

On November 25, 2009 plaintiff submitted to the FAA Contracting Officer the nonpayment and underpayment claims currently before the court. Compl. ¶ 17. Plaintiff's nonpayment claim alleges that the FAA failed to pay the first three rental payments due under the Lease. *See* Compl. ¶ 23; *see also* Compl., Demand For Relief, ¶ 1 (seeking $56,640.78 plus interest for nonpayment claim). Plaintiff's underpayment claim alleges that "the FAA has underpaid its rental obligation by $664 every month from October 1, 1998 to October 1, 2006." Compl. ¶ 21; *see also* Compl., Demand For Relief, ¶ 1 (seeking $64,408.00 plus interest for underpayment claim). The contracting officer denied these claims on January 27, 2010. Compl. ¶ 17. Plaintiff timely appealed to the Court of Federal Claims on October 6, 2010. *See* Compl. ¶ 17 (received and filed on Oct. 6, 2010); Pub.L. No. 111–350, § 7104(b)(1), (3), 124 Stat. 3820 (permitting a contractor "to bring an action directly on the claim in the United States Court of Federal Claims" within twelve months of the contractor's receipt of the contracting officer's decision regarding the claim).

On December 1, 2010 defendant filed its Motion to Dismiss, alleging that the court lacks jurisdiction over plaintiff's nonpayment claim under Rule 12(b)(1) and that plaintiff failed to state a claim upon which relief can be granted under Rule 12(b)(6). Def.'s Mot. 1. With respect to defendant's Rule 12(b)(1) motion, defendant argues that "Bowers made a binding election to pursue its claim for nonpayment for the first there months' rent before the Civilian Board of Contract Appeals." Def.'s Mot. 1. Under the CDA, a contractor may appeal a contracting officer's final decision in one of two forums: the appropriate board of contract appeals or the Court of Federal Claims. *See* Pub.L. No. 111–350, § 7104(a), (b)(1), 124 Stat. 3820.

Referred to as the election doctrine, a contractor is precluded from appealing its claim in both forums. *Nat'l Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed.Cir. 1988). Defendant argues that plaintiff's nonpayment claim "is based upon the same basic facts" as plaintiff's September 2006 claim, the denial of which plaintiff appealed to the CBCA. Def.'s Mot. 10. Defendant contends that plaintiff's binding election to appeal its September 2006 claim—which, according to defendant, encompasses plaintiff's nonpayment claim—to the CBCA deprives the Court of Federal Claims of subject-matter jurisdiction to entertain plaintiff's nonpayment claim. Def.'s Mot. 5.

■ With respect to defendant's Rule 12(b)(6) motion, defendant argues that both plaintiff's nonpayment claim and its underpayment claim are barred by claim preclusion. Def.'s Mot. 1. Under the doctrine of claim preclusion, which is an affirmative defense, "when a final judgment has been entered on the merits of a case, '[it] is a finality as to the claim or demand in controversy concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876) (brackets in original)). Defendant maintains that plaintiff's entire complaint is barred because it arises from the same lease and the same basic facts as plaintiff's previous suit against the government before the CBCA, which issued a final decision upon the merits. *See* Def.'s Mot. 1, 11–15.

## II. Legal Standards [5]

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

■ Subject matter jurisdiction is a threshold matter that a court must deter-

**5.** The Rules of the United States Court of Federal Claims (RCFC) generally mirror the Federal Rules of Civil Procedure (FRCP). *See C. Sanchez & Son, Inc. v. United States,* 6 F.3d 1539, 1541 n.

2 (Fed.Cir.1993) ("The [RCFC] generally follow the [FRCP]."); *Champagne v. United States,* 35 Fed.Cl. 198, 205 n. 5 (1996) ("In general, the rules of this court are closely patterned on the

mine at the outset of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed.Cir.2007). The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, "[w]hen a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute." *Arakaki v. United States*, 62 Fed.Cl. 244, 247 (2004) (citing *Reynolds*, 846 F.2d at 747 and *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985)); 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[3] (3d ed. 2004) ("[U]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation to the face of the pleadings . . . ."). If a court determines that it does not have jurisdiction, it must dismiss the claim. Rules of the United States Court of Federal Claims (RCFC) 12(h)(3).

■ The Tucker Act establishes and limits the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims). 28 U.S.C. § 1491 (2006). The Tucker Act provides that this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act also provides the court with jurisdiction to hear claims brought under the CDA. *See* 28 U.S.C. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 . . . ."). Although the Tucker Act waives the sovereign immunity necessary for a plaintiff to sue the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), it does not confer any substantive rights upon a plaintiff, *United States v. Testan*, 424 U.S. 392, 398–401, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute or constitutional provision itself, in order for the case to proceed. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed.Cir.2008).

The CDA is such a money-mandating statute. The CDA confers upon this court the authority to adjudicate a claim for monetary damages arising from "any express or implied contract . . . made by an executive agency for [ ] the procurement of property, other than real property in being." Pub.L. No. 111–350, § 7102(a)(1), 124 Stat. 3817; *see Forman v. United States*, 767 F.2d 875, 879 (Fed.Cir.1985) (holding that "real property in being" "refers to the procurement of existing interests—fees, easements, leases, etc.—and not the initial creation of these interests"); *see also Kelley v. United States*, 19 Cl.Ct. 155, 160 (1989) ("Under the CDA, the [Court of Federal Claims] has jurisdiction to entertain claims arising from the lease of real property . . . .").

The CDA requires that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be in writing." Pub.L. No. 111–350, § 7103(a)(2), 124 Stat. 3818. Although the CDA does not define "claim," Federal Acquisition Regulation (FAR) section 52.233–1 defines the term as "[1] a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a

[FRCP]. Therefore, precedent under the [FRCP] is relevant to interpreting the rules of this court . . . ."). RCFC 12(b) tracks FRCP 12(b) exactly; therefore, this court relies on cases interpreting FRCP 12 as well as those interpreting RCFC 12.

sum certain...." 48 C.F.R. § 52.233–1(c).[6] The contracting officer must issue a final decision on the claim, a requirement the United States Court of Appeals for the Federal Circuit (Federal Circuit) has enforced as a "jurisdictional prerequisite." *See England v. Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed.Cir.2004). The contractor may appeal a contracting officer's final decision either to the appropriate board of contract appeals or the Court of Federal Claims. *See* Pub.L. No. 111–350, § 7104(a),(b)(1), 124 Stat. 3820; *see id.* § 7105(e)(1)(B), 124 Stat. 3822 (conferring upon the CBCA "jurisdiction to decide any appeal from a decision of a contracting officer of any executive agency ... relative to a contract made by that agency").

B. **12(b)(6) Motion to Dismiss for Failure to State a Claim**

■ Rule 12(b)(6) grants the court authority to dismiss plaintiff's complaint if it fails to state a claim upon which relief can be granted. *See* RCFC 12(b)(6). "This court will dismiss a complaint for failure to state a claim upon which relief can be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling him relief." *Lechliter v. United States*, 70 Fed.Cl. 536, 543 (2006); *see* Moore et al., *supra*, § 12.34[1][a] (stating that the movant has the burden to show "beyond doubt that the plaintiff can prove no set of facts in support of [its] claim [that] would entitle [it] to relief" (internal quotations omitted)). In determining whether it should grant a 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001) (internal citations omitted). The purpose behind Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993) (cit-

ing *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). A failure to state a claim upon which relief can be granted warrants a judgment on the merits rather than a dismissal for lack of jurisdiction. *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995).

■ A complaint can also be dismissed under Rule 12(b)(6) if it is clear from the face of the complaint that an affirmative defense exists. *Larson v. United States*, 89 Fed.Cl. 363, 382 (2009). "Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss include, among others, 'various types of estoppel' and 'the barring effect of res judicata and related preclusion principles.'" *Corrigan v. United States*, 82 Fed.Cl. 301, 304 (2008) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2008)). "As claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised via a merits-based RCFC 12(b)(6) motion." *Chisolm v. United States*, 82 Fed.Cl. 185, 193 (2008).

■ In deciding whether to dismiss a complaint under Rule 12(b)(6), courts are "not limited to the four corners of the complaint." *Kawa v. United States*, 77 Fed.Cl. 294, 307 (2007) (internal quotations omitted). For example, courts "may also consider 'matters incorporated by reference or integral to the claim,'" other matters appearing in the record of the case, and matters of public record of which the court can take judicial notice. *Id.* (quoting 5B Wright & Miller, *supra*, § 1357); *see Love Terminal Partners v. United States*, 97 Fed.Cl. 355, 385 (2011) (stating that the court can consider "exhibits attached to the complaint, undisputed documents relied upon by the plaintiff, other items appearing in the record of the case, and matters of public record" without converting a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment). "Courts have 'complete discretion to determine whether or not to accept the submission of

---

6. The Federal Circuit has held that the FAR "sets forth the only three requirements of a non-routine 'claim' for money: that it be (1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed.Cir. 1995).

any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion' and rely upon that material." *Toon v. United States,* 96 Fed.Cl. 288, 296 (2010) (quoting 5C Wright & Miller, *supra,* § 1366).

## III. Discussion

### A. Election Doctrine

 Under the election doctrine, "a contractor wishing to contest an adverse final decision by [a] contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the [Court of Federal Claims]." *Nat'l Neighbors, Inc. v. United States,* 839 F.2d 1539, 1541 (Fed.Cir.1988); *see* Pub.L. No. 111–350, § 7104(a),(b)(1), 124 Stat. 3820–41. Once a contractor chooses the forum in which to appeal, the contractor's choice is binding, and the contractor is no longer able to pursue its appeal in the alternate forum. *See Nat'l Neighbors, Inc.,* 839 F.2d at 1542 ("The binding election of forums is an 'either-or' alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision.") (citing *Santa Fe Eng'rs, Inc. v. United States,* 677 F.2d 876, 878 (Ct.Cl.1982)); *BRC Lease Co. v. United States (BRC),* 93 Fed.Cl. 67, 71 (2010) ("[O]nce the contractor makes a binding forum election, the decision must stand and the contractor may not appeal the contracting officer's decision in the non-selected forum."). "Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction." *Paradigm Learning, Inc. v. United States,* 93 Fed.Cl. 465, 474 (2010); *see also Nat'l Neighbors, Inc.,* 839 F.2d at 1542–43 (stating that "a contractor's filing of an appeal or initiation of a suit in a forum with jurisdiction over the proceeding" constitutes an election under the election doctrine).

Although the Federal Circuit has stated that "Congress definitively rejected the idea that the CDA was abrogating the doctrine of claim preclusion and permitting the splitting of claims based on the same set of transactional facts," *Phillips/May Corp. v. United States,* 524 F.3d 1264, 1270 (Fed.Cir.2008) (footnote omitted), the Federal Circuit has also noted that, under the CDA, "a single government contract may give rise to more than one claim, and that a contractor may pursue his rights by filing 'two or more suits' in either one or more fora," *Placeway Constr. Corp. v. United States (Placeway),* 920 F.2d 903, 907 (Fed.Cir.1990). Multiple claims "typically involve separate and distinct disputes over separate and distinct [contracting officer] decisions under a single contract where findings made by the court or the agency boards would not affect the claims" before the other. *BRC,* 93 Fed.Cl. at 71; *see also Nwogu v. United States,* 94 Fed.Cl. 637, 655 (2010) (finding that plaintiff's claims before the Court of Federal Claims arose "out of the same operative facts" as the claims before the board).

Defendant contends that the election doctrine bars plaintiff's nonpayment claim because it is the same as plaintiff's September 2006 claim, the denial of which was later appealed to the CBCA. Def.'s Mot. 7–11. Plaintiff counters that its nonpayment claim is "entirely separate" from its September 2006 claim. Pl.'s Resp. 2; *see also* Pl.'s Resp. 3 ("The case that is now before this [c]ourt is not the same as the one that was appealed from the contracting officer's decision to the CBCA resulting in a decision dated August 27, 2009."). In this case, plaintiff made two submissions for a final decision to the FAA Contracting Officer. The first was dated February 25, 2008 and listed five claims, including unpaid rent for September 2006 (September 2006 claim). Def.'s App. A1–A8 (Pl.'s Feb. 25, 2008 Letter to CO). The Contracting Officer denied most of these claims, and plaintiff appealed the denial to the CBCA. CBCA Decision *1. Plaintiff's second submission, dated November 25, 2009, was limited to the nonpayment and underpayment claims now before the court. Def.'s App. A102–105 (Pl.'s Nov. 25, 2009 Letter to CO). The Contracting Officer substantially denied these claims on January 27, 2010. Def.'s App. A107–109 (CO's Jan. 27, 2010 Final Decision). It is the Contracting Offi-

cer's January 27, 2010 final decision that plaintiff has appealed to this court. *See* Compl. ¶ 17 (stating that the contracting officer denied plaintiff's nonpayment and underpayment claims); Pl.'s Resp. 5 ("Bowers chose to forego appealing the contracting officer's decision to the CBCA, and instead filed in this [c]ourt.").

█ Because the court finds that the two claims are "separate and distinct," *see BRC,* 93 Fed.Cl. at 71, the election doctrine does not apply to prevent the court from hearing plaintiff's nonpayment claim.[7] Plaintiff's September 2006 claim and nonpayment claim do not arise from "the same operative facts" for the purposes of the election doctrine. *See Nwogu,* 94 Fed.Cl. at 655. Plaintiff's September 2006 claim sought reimbursement for rent due in September of 2006 in the amount of $22,341.37. CBCA Decision *13. Plaintiff's nonpayment claim before the court seeks reimbursement for rent due from January 1994 through March of 1994 in the amount of $56,640.78. Compl. ¶¶ 22–23, De-

mand for Relief ¶ 2. Although both claims are based upon the same contract and involve "what rent payments were made by the FAA and when they were made," *see* Def.'s Mot. 10, plaintiff's nonpayment claim and September 2006 claim are more than twelve years apart and span eight modifications of the Lease, *see* Compl. ¶¶ 13–16 (discussing Modifications 1, 7 and 8); Exs. B–D, F (Modifications 1, 3, 7 and 8); *see also Pueblo of Zuni v. United States,* 467 F.Supp.2d 1099, 1110–12, (D.N.M.2006) (finding that claims based on the same contracts but covering different fiscal years "are not based on the same set of operative facts" as they "necessarily concern facts as well as negotiated terms and amounts which differ from contracts arising from [other] years").

Moreover, plaintiff relies on different facts to support each of its claims. Plaintiff based its September 2006 claim on the fact that the last rental payment was made on September 13, 2006, that rent was to be paid in arrears and that rent was due on the first of each

---

7. In its Motion, defendant cites *Spodek v. United States,* 52 Fed.Appx. 497, 499 (Fed.Cir.2002) (unpublished) for the binding election test first set forth in *Jo–Mar Corp. v. United States (Jo–Mar),* 15 Cl.Ct. 602, 605 (1988): "[A] contractor makes a binding election when "1) it has sought to avail itself of one forum over another; and 2) that forum has the ability to exercise jurisdiction at the time the election is attempted." Def.'s Mot. 5–6. In its Reply, defendant acknowledges Federal Circuit Rule 32.1(b), which states that "[a]n opinion or order which is designated as nonprecedential is one determined by the panel issuing it as not adding significantly to the body of law," and cites three Court of Federal Claims cases that employ the *Jo–Mar* test. Def.'s Reply 2 n. 2 (citing *Schickler v. United States,* 54 Fed.Cl. 264, 269 (2002); *Marshall Associated Contractors, Inc. v. United States (Marshall),* 31 Fed.Cl. 809, 815 (1994); *Info. Sys. & Networks Corp. v. United States (Info. Sys.),* 17 Cl.Ct. 527, 529 (1989)).

The plaintiff in *Jo–Mar* failed to follow the procedural rules that govern the filing of an appeal of a Contracting Officer's decision with the contract board of appeals, resulting in the board's removal of plaintiff's complaint from the docket. *Jo–Mar,* 15 Cl.Ct. at 606. The court held that the board's dismissal of plaintiff's complaint "precludes the application of the Election Doctrine to this case because the forum in which [plaintiff] attempted to elect to prosecute its claim did not, and could not exercise, jurisdiction of the appeal." *Jo–Mar,* 15 Cl.Ct. at 607; *see Schickler,* 54 Fed.Cl. at 269 (holding that, where the board had previously dismissed plain-

tiff's claim for lack of jurisdiction, plaintiff's claim now before the court is not barred under the election doctrine); *Info. Sys.,* 17 Cl.Ct. at 529–30 (same); *see also Marshall,* 31 Fed.Cl. at 814–15 (staying proceedings, under the Fulford doctrine, on plaintiff's reprocurement costs claim before the court pending the board's decision on plaintiff's default termination claim).

The facts in this case do not warrant the strict application of the *Jo–Mar* test that defendant champions. *See* Def.'s Mot. 5 ("[T]he *[Jo–Mar]* test does not include analysis of whether the board actually or directly addressed the merits of the claim at issue."); Def.'s Mot. 6 ("Here, the only two factors for the [c]ourt's analysis are: (1) whether Bowers sought to avail itself of the CBCA; and (2) whether the CBCA had the ability to exercise jurisdiction."). The distinct jurisdictional issues raised in *Jo–Mar* and in the few cases that employ its test, are not currently before the court. Here, the issue is whether plaintiff's second submission to the contracting officer (the denial of which plaintiff appealed to the court) was separate and distinct from plaintiff's earlier submission (the denial of which plaintiff appealed to the CBCA).

Defendant's reliance on *Kunz Constr. Co. v. United States (Kunz),* 12 Cl.Ct. 74 (1987) and related authorities for determining whether the elected forum has jurisdiction over a modified claim, *see* Def.'s Mot. 7–10, is inapposite. The court is unaware of any authority that relies on *Kunz* and related authorities when analyzing whether a claim is barred under the election doctrine.

month. CBCA Decision *13–14; *see* Lease 1 (providing "in arrears" language); Lease 4 (General Clause 22.552.232–71(a)(1) (stating that rent was "due on the first workday of each month")); *see also* CBCA Decision *10 (stating that plaintiff's bank records, which were consistent with FAA bank records, "reflect payments made from June 1998 to September 2006"). Plaintiff's nonpayment claim, however, is based on an absence of payment records for the months of January, February and March of 1994 and the declaration of an FAA accounting technician. Compl. ¶ 9 n. 6 (citing Ex. I (Jan. 22, 2009 Decl. of Amber L. Lawson)); Pl.'s Mot. Ex. H (FAA accounting records listing rental payments from May 2, 1994 to March 26, 1996); *see also* CBCA Decision *7–*8 (discussing these accounting records).

Accordingly, the contracting officer's findings with respect to plaintiff's September 2006 claim would have little effect on the contractor officer's findings regarding plaintiff's nonpayment claim. *See BRC*, 93 Fed.Cl. at 71 (stating that findings made by the court or board over "separate and distinct disputes over separate and distinct [contracting officer] decisions" would not affect the claims before the other). The FAA contracting officer who reviewed plaintiff's September 2006 claim did not and could not consider plaintiff's nonpayment claim because it is a new and distinct claim. *See Foley Co. v. United States*, 26 Cl.Ct. 936, 945 (1992) (stating that the contracting officer must be afforded "adequate notice of the basis and amount of the claim"); *Modeer v. United States*, 68 Fed.Cl. 131, 139 (2005) ("Because there is no direct or indirect mention of a claim for utility costs in [plaintiff's submission to the contracting officer], and no means by which the contracting officer could render a final decision on the amount of such costs owed plaintiffs, the court concludes that this is a new claim that has not been presented to the contracting officer."). The Election Doctrine does not apply here because plaintiff never presented its nonpayment claim to the contracting officer in the previous CBCA action. The court therefore has jurisdiction, and defendant's motion is DENIED–IN–PART.

## B. Claim Preclusion

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Res judicata encompasses two concepts: issue preclusion and claim preclusion. *Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1370 (Fed.Cir. 2006). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). (citation omitted). "Claim preclusion refers to the effect of foreclosing any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar." *Id.* "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

Unlike the election doctrine, the doctrine of res judicata "extends beyond those causes of action expressly included by the plaintiff in his claim to cover causes of action which were not but *should* have been raised in the prior litigation." *Brown v. United States*, 3 Cl.Ct. 31, 41 (1983) (emphasis in original); *see Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed.Cir.2006) ("[T]he defense of claim preclusion will generally be available where the asserted claim was, or could have been, raised in a prior action between the parties which been adjudicated on the merits."). Res judicata therefore "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown*, 442 U.S. at 131, 99 S.Ct. 2205; *see also Phillips/May Corp. v. United States*, 76 Fed.Cl. 671, 678 (2007), *aff'd, Phillips/May Corp.*, 524 F.3d at 1266 ("Application of the doctrine of *res judicata* . . . is intended to relieve parties of the cost and vexation of multiple lawsuits, con-

serve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.") (internal quotations omitted). The "modern trend" in determining whether a cause of action should have been raised in a prior proceeding, is "to insist first, that a plaintiff raise his entire 'claim' in one proceeding, and second, to define 'claim' to cover all the claimant's rights against a particular defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Container Transp. Int'l, Inc. v. United States (Container)*, 199 Ct.Cl.713, 718, 468 F.2d 926, 928–29 (Ct.Cl.1972). Whereas the election doctrine focuses on the claim plaintiff presented to the contracting officer, claim preclusion entails a broader examination of any modifications plaintiff could have made to this claim on appeal.[8]

 For claim preclusion to apply, "the party asserting the bar must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir.1983). Transactional facts have been defined "in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same factual allegations.'" *Ammex, Inc. v. United States*, 334 F.3d 1052, 1056 (Fed.Cir.2003) (citations omitted). "The doctrine is properly applied to the final judgment of an administrative agency, such as a board of contract appeals, that 'is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Phillips/May Corp.*, 524 F.3d at 1268 (quoting *United States v. Utah Constr. & Mining Co.*, 384

U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

 The question of whether two claims involve the same set of transactional facts is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Restatement (Second) Judgments § 24(2) (1982); *see Young Eng'rs, Inc.*, 721 F.2d at 1314 (stating that the Federal Circuit is guided by the Restatement (Second) of Judgments). Claims arising out of the same contract are presumed to "constitute the same claim for res judicata purposes." *Phillips/May Corp.*, 524 F.3d at 1272; *see id.* at 1271 ("[C]laims under a single contract generally must be brought together."); *Container*, 199 Ct.Cl. at 717, 468 F.2d at 928 ("[N]ormally, a single claim ... arises out of each single, indivisible contract...."). This presumption can be overcome "by showing that the claims are unrelated." *Phillips/May Corp.*, 524 F.3d at 1272; *see id.* at 1271 (stating that claims can be split if they "involve different sets of transactional facts"); *Placeway*, 920 F.2d at 907 (stating that "if the claims ... will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims will exist").

Plaintiff does not and could not dispute that its September 2006 claim before the CBCA involved identical parties or that the CBCA decision was a final judgment on the merits. *See* Pl.'s Resp. *passim; see generally* CBCA Decision. Therefore, the issue before the court, for purposes of res judicata, is whether plaintiff's nonpayment and underpayment claims are "based on the same set of transactional facts" as its September 2006 claim before the CBCA. *See Young Eng'rs*,

---

8. It is with respect to defendant's claim preclusion argument that *Kunz* and its progeny more aptly applies. *See Kunz*, 12 Cl.Ct. at 79; *supra* n. 7 (discussing defendant's application of *Kunz* and related authority to its election doctrine argument). Under *Kunz*, a contractor's elected forum (here, the CBCA) has jurisdiction over a contractor's modified claims (here, plaintiff's nonpayment and underpayment claims), if the modified claims are "based on the same set of operative facts previously presented to contracting officer, and [the elected forum] finds that the contractor neither knew nor reasonably should have known at the time when the claim was presented to the contracting officer, of the factors justifying a[ ] [change] in the amount of the claim." *Kunz*, 12 Cl.Ct. at 79.

*Inc.,* 721 F.2d at 1314. Because the court finds that plaintiff's present claims do arise from the same set of transactional facts as its claim before the CBCA, and that plaintiff should have known of the facts giving rise to its present claims, plaintiff's nonpayment and underpayment claims are barred before the court.

▪ As an initial matter, the court finds that claim preclusion, which is an affirmative defense, is clear from the face of plaintiff's Complaint. *See Larson,* 89 Fed.Cl. at 382 (stating that a complaint can also be dismissed under Rule 12(b)(6) if it is clear from the face of the complaint that an affirmative defense exists). In its Complaint, plaintiff cites to six exhibits that plaintiff neglected to attach to its Complaint. *See* Compl. ¶¶ 5–9, 11–16 (citing Exhibits A, B, D, E, H and I in footnotes two through fifteen). Plaintiff does attach these exhibits, as well as several other exhibits, to its Motion for Summary Judgment (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 5; *see supra* n. 1 (discussing the timing of these filings). In deciding whether to dismiss a complaint under 12(b)(6), under which the doctrine of claim preclusion falls, courts may look outside the complaint and "consider matters incorporated by reference or integral to the claim." *Kawa,* 77 Fed.Cl. at 307 (internal quotations omitted); *see Fecht v. Price Co.,* 70 F.3d 1078, 1080 n. 1 (9th Cir.1995) ("Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (internal quotations omitted). The court therefore looks to the exhibits that plaintiff cites in its Complaint but filed with its Motion for Summary Judgment.

Exhibit I, referred to as the "Declaration of Amber Lawson" in plaintiff's Complaint (Lawson Declaration), Compl. ¶ 9 n. 6, appears to be a declaration that plaintiff prepared in prior litigation with the FAA before the CBCA, *see* Pl.'s Mot. Ex. I (Jan. 22, 2009 Decl. of Amber L. Lawson); *see also* CBCA Decision *8 (citing "Declaration of Amber L. Lawson (Jan. 22, 2009)"). The header of the Lawson Declaration consists of the CBCA seal and the words "United States Civilian Board of Contract Appeals." Jan. 22, 2009 Decl. of Amber L. Lawson 1. The caption of the Lawson Declaration lists Bowers as the appellant and the FAA as the respondent and includes the CBCA case number (1196). *Id.* Moreover, the content of the Lawson Declaration, provided by the FAA's Lead Accounting Technician, includes references to monthly rental payments from the FAA to Bowers from April 1994 through September 2006. *Id.* at 1–2. Given the foregoing, the court agrees with defendant that the Complaint, considered with the exhibits referenced in the Complaint, "indicate[ ] that Bowers previously brought suit against the FAA alleging that Bowers was not paid in full under the Lease, thereby rendering claim preclusion an obvious defense to the allegations contained in the complaint." Def.'s Mot. 11–12.

▪ As for the substance of defendant's claim preclusion affirmative defense, defendant argues that plaintiff's nonpayment and underpayment claims are based on the same set of transactional facts as plaintiff's September 2006 claim before the CBCA because all of plaintiff's claims stem from the Lease. Def.'s Mot. 13; *see also* Def.'s Mot. 14 ("All of the claims involve the issue of what was due to Bowers under the contract.").[9] Ac-

---

9. Defendant finds support for its argument that claim preclusion bars plaintiff's nonpayment and underpayment claims in plaintiff's Complaint and the CBCA Decision. *See* Def.'s Mot. 13–14. As discussed above, *supra* Part II.C, the court may consider materials outside the pleadings— for example, matters of public record of which the court can take judicial notice—under a Rule 12(b)(6) motion to dismiss, *Kawa,* 77 Fed.Cl. at 307. The court finds that the CBCA Decision is a public record and is subject to judicial notice. Not only are agency decisions well-regarded as "a proper subject of judicial notice," *Opoka v. Immigration & Naturalization Serv.,* 94 F.3d 392,

394–95 (7th Cir.1996); *see also Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis,* 583 F.3d 1371, 1379 (Fed.Cir.2009) (taking judicial notice of plaintiff's bid protest with the Government Accounting Office); *Lawrance Aeronautical Corp. v. United States,* 133 Ct.Cl. 1, 130 F.Supp. 603, 606 (1955) (taking judicial notice of an Appeal Board, Office of Contract Settlement decision), but the CBCA Decision is publicly accessible at the CBCA website, *see* http://www.cbca.gsa.gov/ (enter "Bowers" into search field and click on CBCA 1196 Decision) (last visited April 22, 2011), *see Love Terminal Partners*

cording to defendant, "[t]he extensive factual overlap between Bowers'[ ] present claims and its previous suit demonstrates that the present claims are not separable." Def.'s Mot. 13. Defendant also argues, from a pragmatic perspective, that plaintiff's non-payment and underpayment claims "would have formed a convenient trial unit" with its September 2006 claims, and that "the parties' expectations dictate that all of [plaintiff's] claims regarding this lease be brought in one suit." Def.'s Mot. 14; *see* Restatement (Second) Judgments § 24(2) (1982) (stating that an examination of whether two claims involve the same set of transactional facts is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations").

■ With respect to plaintiff's nonpayment claim, defendant argues that its September 2006 claim before the CBCA was partially based upon plaintiff's "allegation that the FAA did not make the first three monthly payments when they were due." Def.'s Mot. 13. Defendant contends that "the CBCA necessarily evaluated all of the arguments and evidence" regarding plaintiff's nonpayment claim, and "[t]here is no indication that [plaintiff] intends to present any material evidence that was not put before the CBCA." Def.'s Mot. 14.

Defendant premises its underpayment claim argument on the sum certain requirement under the CDA, Def.'s Mot. 14; *see* 48 C.F.R. § 52.233–1(c), arguing that plaintiff "was forced to identify the amount of rent that was due under the [L]ease [ ($22,-341.37) ]" in its September 2006 claim, Def.'s Mot. 13–14. Defendant contends that plaintiff, via its underpayment claim, "now seeks to assert a claim for a greater amount of rent for certain months, arguing that the amount which it previously alleged was due under the lease is less than what was truly due." Def.'s Mot. 14 (citing Compl. ¶ 21).

Plaintiff admits that its present claims are based upon the same contract as its September 2006 claim before the CBCA, *see* Pl.'s Resp. 4 (stating as such with respect to its nonpayment claim) and also acknowledges that all of the claims "might have formed a convenient trial unit," Pl.'s Resp. 6. Plaintiff further acknowledges that its September 2006 claim was "partially based upon [its] general allegation the FAA apparently had not made the first three monthly payments when they were due." Pl.'s Resp. 5–6; *see* CBCA Decision *14 ("Bowers argues that since the [FAA] records do not reflect payments for the first three months of the lease, the FAA's proof is inadequate to demonstrate that all lease payments were made."). The CBCA even addressed plaintiff's nonpayment claim and declined to accept "a scenario under which one or more of the first three payments commencing January 1994 were not made and Bowers did not complain in writing or otherwise regarding the FAA error." CBCA Decision *14. As for plaintiff's underpayment claim, the court agrees that "determination of what amount was due under the lease was necessary to the CBCA's judgment." *See* Def.'s Mot. 14; CBCA Decision *20 (holding, in an unrelated holdover rent claim, that plaintiff was entitled to $22,341.37 for "the monthly rate in effect at the conclusion of the lease"). Nothing before the court justifies departing from the general rule that claims arising out of the same contract are presumed to constitute the same claim under the doctrine of res judicata. *Phillips/May Corp.*, 524 F.3d at 1271. Accordingly, the court finds that plaintiff's present claims and plaintiff's September 2006 claim before the CBCA constitute the same claim for res judicata purposes. *See Young Eng'rs, Inc.*, 721 F.2d at 1314.

Plaintiff's argues, however, that "the FAA failed to produce necessary payment records that would have allowed Bowers to bring these present claims in front of the CBCA." Pl.'s Resp. 6 (internal quotations omitted). According to plaintiff, "until the actual pay-

*v. United States*, 97 Fed.Cl. 355, 385 (2011) (noting that "public records and government documents available from reliable sources on the Internet" are generally subject to judicial notice).

Accordingly, the CBCA decision is properly before the court under defendant's Rule 12(b)(6) motion to dismiss.

ment records were disclosed, [it] did not know and could not conclusively establish that it was not paid rent for the first three months of the [L]ease and that it was underpaid pursuant to the terms of the [L]ease." Pl.'s Resp. 6. Plaintiff contends that its present claims are "separate and distinct from the [September 2006] claim ultimately decided by the CBCA because the facts giving rise to the present claim[s] were not known by Bowers until he was in the midst of an appeal of the contracting officer's decision in front the CBCA." Pl.'s Resp. 6.

The court finds unavailing plaintiff's contention that the FAA's failure "to produce necessary payment records" impeded plaintiff's ability to raise its nonpayment and underpayment claims before the CBCA. *See* Pl.'s Resp. 6; *see also* Pl.'s Resp. 4 (arguing that plaintiff should not be barred from litigating the present claims before the court "since it was the FAA that failed to produce the payment records that, if disclosed sooner, would have allowed [plaintiff] to bring the [present claims] with [it's September 2006 claim]"). Plaintiff represents an investment company that leased to the government over 13,000″ square feet of space for more twelve years. Compl. ¶¶ 3, 5. Plaintiff should have kept records of rental payments made by the FAA over the entire course of the Lease. The court will not allow plaintiff to benefit from its claimed failure to do so by hearing claims that plaintiff could have and should have raised before the CBCA.

Moreover, according to the CBCA Decision, plaintiff had access to the payment records that give rise to its present underpayment claim. Plaintiff's underpayment claim alleges that defendant "underpaid its rental obligation by $664 every month from October 1, 1998 to October 1, 2006." Compl. ¶ 21.

Although the CBCA determined that "[n]either party maintained complete records of payments under the [L]ease," it found that plaintiff's payment records began in 1998. CBCA Decision *6. More significantly, the CBCA found that plaintiff's bank records, which "reflect payments from June 1998 to September 2006[,] ... are consistent with the FAA's records." *Id.* at *8. In other words, the CBCA found that plaintiff had access to payment records, which were consistent with those presented by the FAA, for precisely those months at issue in plaintiff's underpayment claim. Accordingly, the court finds unpersuasive plaintiff's contention that "the facts giving rise to the present claim were not known by [plaintiff] until [it] was in the midst of an appeal of the contracting officer's decision in front the CBCA." [10] *See* Pl.'s Resp. 6.

Given the foregoing, the court concludes that plaintiff's underpayment claim is barred by claim preclusion. Defendant's Motion is GRANTED under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

## IV. Conclusion

For the foregoing reasons, the court GRANTS defendant's Motion to Dismiss. The Clerk is directed to dismiss plaintiff's Complaint.

IS SO ORDERED.

---

10. Defendant contends that the disputed FAA payment records were actually faxed to plaintiff in 1996, prior to plaintiff's submission of its September 2006 claim to the contracting officer and subsequent appeal to the CBCA. Def.'s Reply 4. These FAA payment records are attached to plaintiff's Motion as Exhibit H. *See* Pl.'s Mot. Ex. H (FAA accounting records listing rental payments from May 2, 1994 to March 26, 1996); Compl. ¶ 9 n. 6 (citing to "Exhibit H–FAA Document from Accounting Department"). According to defendant, Exhibit H of plaintiff's Motion is incomplete, as it "does not include the facsimi-

le transmission confirmation page or cover sheet that was part of the original exhibit [before the CBCA]." Def.'s Reply 4. Defendant attached the entire exhibit to its Reply, which indicates that plaintiff received these records on May 2, 1996. Def.'s Reply 4; *see* Def.'s Reply Ex. A. The court recognizes that plaintiff has not had an opportunity to respond to this evidence, but the court does not rely on Exhibit A of defendant's Reply in reaching its conclusion that plaintiff should have known of the facts giving rise to its nonpayment claim prior to its appeal of the September 2006 claim before the CBCA.